UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ELBERT DIXON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:04CV337 DJS |
| | ) | (TIA) |
| CHUCK DWYER, et al.,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Missouri state prisoner Elbert Dixon's pro se petition for writ of habeas corpus under 28 U.S.C. § 2254. All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

On October 20, 1998, Petitioner was charged as a prior and persistent offender in the Circuit Court of St. Louis City with first degree assault, first degree burglary, and armed criminal action. (Resp. Exh. B-1 at 9-10, 18-19). On July 8, 1999, Petitioner was convicted by a jury in the Circuit Court of St. Louis City, Missouri, of one count of first degree assault and one count of armed criminal action. (Resp. Exh. B-1 at 48-50). On August 6, 1999, the circuit court sentenced Petitioner as a prior and persistent offender to two terms of life imprisonment. (Resp. Exh. B-1 at 57-59). Petitioner appealed the judgment, and on May 16, 2000, Petitioner's convictions were affirmed on direct appeal by the Missouri Court of Appeals, but the Court of Appeals remanded for resentencing. (Resp. Exh. E; State v. Dixon, 24 S.W.3d 247 (Mo. Ct. App. 2000)). On October 2,

---

[1]Petitioner is currently incarcerated at Southeast Correctional Center in Charleston, Missouri. Chuck Dwyer is the Superintendent of Southeast Correctional Center. Because Petitioner is challenging sentences to be served in the future Missouri Attorney General Jeremiah "Jay" Nixon should be named as a proper party respondent. Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts.

2000, the circuit court sentenced Petitioner to two consecutive life terms of imprisonment. Petitioner's motion for rehearing and application for transfer to the Missouri Supreme Court was denied on July 5, 2000, and August 29, 2000. (Dixon, 24 S.W.3d 247). Petitioner thereafter filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence under Missouri Supreme Court Rule 29.15. (Resp. Exh. F at 2-12). On September 19, 2001, Petitioner's appointed counsel filed an Amended Motion to Vacate, Set Aside or Correct Judgment. (Resp. Exh. F at 16-25). The post-conviction relief court denied Petitioner's amended motion without an evidentiary hearing on June 18, 2002. (Resp. Exh. H at Appendix). On June 10, 2003, the Missouri Court of Appeals affirmed the denial of Petitioner's post-conviction relief. (Resp. Exh. I; Dixon v. State, 108 S.W.3d 123 (Mo. Ct. App. 2003)). Petitioner pursued no other action in state court. The instant petition for writ of habeas corpus, signed by Petitioner on April 9, 2004, and received by this Court on March 22, 2004, was filed on March 22, 2004, upon Petitioner being granted leave to proceed in this cause in forma pauperis.

Petitioner is currently incarcerated at the Southeast Correctional Center in Charleston, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis City, Missouri. In the instant petition for writ of habeas corpus, Petitioner raises four grounds for relief:

(1) That the trial court erred in finding and sentencing Petitioner as a persistent offender under § 558.016;

(2) That the trial court erred in overruling Petitioner's objection to the state eliciting hearsay testimony from Officer Kwabena Woods regarding what eyewitness Evelina Marr said with respect to the charged offenses;

(3) That he received ineffective assistance of trial counsel in that counsel failed to object to the variance between the information and the instruction for first degree assault; and

(4)    That he received ineffective assistance of appellate counsel in that counsel failed to brief the variance issue on appeal.

In response, Respondent contends that Petitioner has exhausted his claims inasmuch as they have been properly raised in the state courts, or because Petitioner has no available non-futile state remedies by which he could present these claims. Further, Respondent argues that the claims raised are without merit and should be denied.

## 1. Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The Court must first look to see whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988); see also Boerckel, 526 U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Smittie, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error. Coleman v. Thompson, 501 U.S. 722 (1991); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995). Before reviewing any claims raised in a habeas petition, the Court may require that every ground advanced by the petitioner survive this exhaustion analysis. Rhines v. Weber 544 U.S. 269 (2005).

A review of the record shows Petitioner's claims to be exhausted inasmuch as Petitioner properly raised the claims in state court.

## II. Procedural Default

"[A] federal habeas petitioner's claims must rely on the same factual and legal bases relied on in state court." Winfield v. Roper, 460 F.3d 1026, 1034 (8th Cir. 2006); Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005), cert. denied, 126 S. Ct. 1569 (2006). Claims in a federal habeas petition not presented in state court proceedings for which there is no remaining state court remedy are defaulted, and a habeas petitioner's default will be excused only if he shows cause and prejudice for the default or a miscarriage of justice. Winfield, 460 F.3d at 1034. The first claim in the instant petition is procedurally defaulted because the claim was not presented in his appeal to the Missouri Court of Appeals or in his state court Rule 29.15 motion. See Osborne, 411 F.3d at 919. Thus, Petitioner must show cause and prejudice to overcome the default.

Claim one was not fairly presented in the state court proceedings in connection with Petitioner's resentencing. A review of the record reflects that Petitioner failed to appeal any part of his resentence in any state court proceeding. Consequently, Petitioner has no available means by which to present this claim to the Missouri courts at this time, and this claim is subject to procedural default. Also, because Petitioner does not even attempt to demonstrate cause or prejudice sufficient to excuse this default, or evidence of actual innocence, claim one is barred and may not be considered by this Court. Wainwright v. Sykes, 433 U.S. 72 (1977); Coleman v. Thompson, 501 U.S. 722 (1991). Accordingly, Petitioner's claim is procedurally barred from review in this federal habeas proceeding and should be denied.

Likewise, in his Writ of Habeas Corpus Supplement and/or Memorandum of Law, Petitioner appears to assert a claim in addition to those raised in his petition, and specifically, that trial counsel

introduced evidence of his post-arrest silence.  (Supplement at 2).  To the extent such claim may be considered to be pending before the Court for determination, the claim is nevertheless barred from review in this habeas proceeding through Petitioner's procedural default of the claim.

A review of the record in this cause shows Petitioner not to have raised the instant claim on direct appeal of his conviction or in any other state proceeding.  Under Missouri law, claims of ineffective assistance of counsel must be raised in a motion for post-conviction relief and on appeal of denial of the motion.  A claim must be presented at each step of the judicial process in state court to avoid procedural default.  Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994).  Because Petitioner failed to raise this claim in his post-conviction relief motion, the federal court cannot reach the merits of the claim absent a showing of cause and prejudice or a demonstration "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Petitioner has neither asserted nor shown cause for or prejudice as a result of his failure to properly raise this claim in state court.  In addition, because Petitioner has made no claim of actual innocence of the crime of which he was convicted, he cannot satisfy the "fundamental miscarriage of justice" exception to the required showing of cause and prejudice.  Schlup v. Delo,513 U.S. 298, 314-15 (1995).  Accordingly, the claim raised in the Supplement is procedurally barred from review in this federal habeas proceeding and should be denied.

### III.     Claims Addressed on the Merits

Section 2254(d)(1) requires federal habeas courts to test the determination of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." Williams v.

Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's

state conviction became final, and the source of doctrine for such law is limited to the United States

Supreme Court. Id., 529 U.S. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it

is opposite to the Court's conclusion on a question of law or different than the Court's conclusion

on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255

F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of

Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where

it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief

is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous

or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

As an initial matter, the undersigned notes that on direct appeal the Missouri Court of Appeals

summarized the facts regarding the issue on appeal:

> The record, viewed in the light most favorable to the verdicts, reveals that on
> September 4, 1998 Jeannine Sanders (victim) ended her relationship with defendant,
> with whom she had been living at the apartment of her aunt, Evelina Marr, for about
> seven months. Later that evening, victim saw defendant outside of her apartment,
> carrying a bottle of wine. She called the police, but when they arrived, defendant was
> gone. Police unsuccessfully searched the area for defendant.
>
> About an hour or two later, aunt returned to the apartment, where victim had
> locked herself inside. As aunt unlocked the door, defendant pushed his way into the
> apartment and grabbed victim, pushing her onto a glass table. Defendant repeatedly
> stabbed victim with the broken glass from the table and then went into the kitchen and
> grabbed a knife. Victim tried to escape, but then appellant caught her and stabbed her
> with the knife. Victim continued to attempt to flee but defendant chased her outside
> onto the balcony and continued to stab her. Defendant threw her into a window.
> Then he kicked her in the head and said, "Bitch, you ain't dead yet." He then fled the
> scene.

When police arrived, they found aunt at the front door of the apartment. Upset and panicked, she relayed to the police what she had witnessed. Police found victim in the outside of the hallway of the apartment building, lying in a pool of blood. She was barely moving and had approximately thirty-five to fifty stab wounds on her arms, neck and face. Police followed a trail of blood from the scene using dogs from the canine unit and found defendant in a yard about one block away. He had cuts on his hands consistent with handling broken glass.

Victim was transported to the hospital, where she had surgery the following day. As a result of her injuries, she lost the ability to completely close her injured hand, had difficulty lifting things, and sustained numerous scars on her body.

Defendant was charged by indictment with assault in the first degree, burglary in the first degree and armed criminal action. Before trial, the state filed a substitute information in lieu of indictment that charged defendant with being a prior and persistent offender. The information charged that defendant was a prior offender in that he had plead guilty or was found guilty of a felony and that he was a persistent offender in that he had plead guilty or was found guilty of two or more felonies committed at different times. It charged that defendant was found guilty of the felony of attempted first degree murder in Kansas on July 10, 1990 and on July 12, 1984, defendant was found guilty of felony of "attempt to commit a felony, to wit: rape" in Tennessee. Certified copies of the court records of the prior convictions were admitted into evidence at trial.

At trial, the state called as witnesses Officers Woods and Smith, and Paramedic Michael Morgan, all of whom had responded to the scene. Aunt did not testify at trial. Officer Woods testified that aunt, who was talking really fast and panicky, told her that as she was entering her door after coming from the neighbor's house, defendant was standing by the door. Aunt asked him to leave, but he refused. As she started to enter, defendant pushed his way in. He grabbed victim, pushed her down onto the glass table and started hitting her. Aunt saw this and ran to the neighbors to call the police. She then returned to the apartment and waited at the door for the police. Defendant objected to the testimony as hearsay and the state responded that it was being offered as an excited utterance. The trial court overruled the objection and allowed the testimony. Defendant failed to preserve the issue by including it in his motion for new trial.

Victim testified that when aunt entered the door, defendant pushed aunt through the door, and picked victim up and threw her through a glass table. Aunt went to call the police. Defendant repeatedly stabbed victim with glass. Then he went into the kitchen to get a knife. Victim tried to escape, but he caught her and stabbed her with the knife. She ran for help, but he caught up with her and threw her through a window. He continued to stab her until she heard someone say police.

Then he kicked her in the head.

> Defendant did not testify, or present evidence in his own defense. The case was submitted to the jury and defendant was found guilty of first degree assault and armed criminal action, but was found not guilty of burglary. The trial court found that defendant had been found guilty of two felonies at different times, in Kansas for attempted second degree murder and in Tennessee for "attempt to commit a felony, to wit : rape." The court sentenced him as a prior and persistent offender to terms of life imprisonment on assault in the first degree and armed criminal action, with the sentences to be served consecutively. It was noted at sentencing that defendant was serving a fifteen year sentence in Kansas.

State v. Dixon, 24 S.W.3d 247, 248-50 (Mo. Ct. App. 2000). Inasmuch as Petitioner does not rebut these factual findings by clear and convincing evidence, they are presumed to be correct. 28 U.S.C. § 2254(e)(1).

Section 2254(d)(1) requires federal habeas courts to test the determination of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id., 529 U.S. at 380-83.

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 125 S.Ct. 1432, 1438 (2005). A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." Id. at 1439; Williams, 529 U.S. at 405. "Federal

habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

## A.   **Ground 2**

In Ground 2 of the instant petition, Petitioner claims that the trial court erred in overruling Petitioner's objection to the state eliciting hearsay testimony from Officer Kwabena Woods regarding what eyewitness Evelina Marr said with respect to the charged offenses.

Petitioner raised this claim on direct appeal of his conviction. (Resp. Exh. C at 9-10, 16-24). The Missouri Court of Appeals denied Petitioner's claim exercising its discretion to review his claim for plain error finding that the claim had not been properly preserved for appellate review inasmuch as Petitioner failed to raise this claim in his motion for new trial. (Resp. Exh. E at 7;State v. Dixon, 24 S.W.3d 247, 251 (Mo. Ct. App. 2000)). On direct appeal, the Missouri Court of Appeals recognized that Petitioner failed to show how the admission of the statements rose to the level of plain error. In relevant part, the Missouri Court of Appeals opined as follows:

> In his second point, defendant contends that the trial court erred in overruling defendant's objection to the state's eliciting of hearsay statements from Officer Woods. In order to preserve an issue for appellate review, the party must object at trial and raise the issue in his motion for new trail. Defendant concedes that such issues were not raised in his motion for a new trial. Therefore, we review for plain error. An allegedly wrongful admission of hearsay testimony does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted. Here, the testimony of Officer Woods regarding statements made to her by aunt were cumulative to the statements made by victim at trial and do not rise to the level of plain error. Point denied.

(Resp. Exh. E at 7 (internal citations omitted); Dixon, 24 S.W.3d at 251).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of this

claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

At the time Petitioner's conviction became final, the law was clearly established that the Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. Idaho v. Wright, 497 U.S. 805, 813 (1990). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990). Hearsay is , by definition, "a statement, other than one made by the declarant while testifying at the trial ... offered in evidence to prove the truth of the matter asserted," and is not admissible except as provided by statute, rule and/or Supreme Court precedent. Fed. R. Evid. 801(c), 802. Hearsay statements may be admitted when 1) "the evidence falls within a firmly rooted hearsay exception" or 2) they contain "particularized guarantees of trustworthiness" such that adversarial testing would be expected to add little, if anything, to the statements' reliability. Ohio v. Roberts, 448 U.S. 56, 66 (1980).

The erroneous admission of hearsay statements does not result in a reversal of conviction, however, if the error was harmless. Chapman v. California, 386 U.S. 18, 24 (1967). Under

Chapman, an error is harmless "only if there could be no reasonable doubt that the error's admission failed to contribute to the jury's verdict." United States v. Chapman, 356 F.3d 843, 846 (8th Cir. 2004) (internal quotation marks and citation omitted). "[V]iolations of the confrontation clause caused by improper admission of hearsay statements are harmless beyond a reasonable doubt when there is overwhelming evidence of defendant's guilt." United States v. Copley, 938 F.2d 107, 110 (8th Cir. 1991).

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

The issue of the admissibility of evidence is a state law question. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation. Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000). In Missouri, whether the probative value outweighs the prejudicial effect of proffered evidence is a question on which a trial court has wide latitude. State v. Swigert, 852 S.W.2d 158, 163 (Mo. Ct. App. 1993). The United States Supreme Court has emphasized that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67. Therefore, the undersigned is limited to addressing whether Petitioner's constitutional

rights were violated by admission of the evidence. <u>Rainer v. Department of Corrs.</u>, 914 F.2d 1067, 1072 (8th Cir. 1990). The inquiry is not whether the trial court erred in admitting the particular testimony, but whether the admission resulted in a trial so fundamentally unfair as to deny Petitioner due process of law. <u>Id.</u> The undersigned must look at the totality of the facts in the case and analyze the fairness of the trial. <u>Id.</u> Further, to justify the grant of habeas corpus, the error must be so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford Petitioner the fundamental fairness which is the essence of due process. <u>Mercer v. Armontrout</u>, 844 F.2d 582, 587 (8th Cir. 1988).

The undersigned concludes under the totality of the circumstances that the admission of Officer Woods' testimony regarding statements made to her by the victim's aunt did not deny Petitioner the right to a fair trial. (Resp. Exh. A, Vol. II at 35-36). Defense counsel objected to Officer Woods' testimony in relevant part as follows:

Prosecutor: Would you please describe her demeanor?

Witness: She was afraid, kind of upset about what had happened with --

Prosecutor: What made you think that?

Witness: She was talking real fast, real panicky about the situation that was going on.

Prosecutor: And when you got there did you observe that anything may have happened?

Witness: Yes. There was blood in the hallway near the front door of the apartment.

Prosecutor: And when you saw Miss Marr did you speak with her?

Witness: Yes, I did.

Prosecutor: What did she tell you?

Witness: She told me that Mr. Dixon --

| | |
|---|---|
| Defense Counsel: | I object as hearsay. |
| The Court: | Response? |
| Prosecutor: | Your Honor, I'm offering it as excited utterance. |
| The Court: | Objection overruled. |
| Prosecutor: | What did she tell you? |
| Witness: | Well, she told me that as she was entering her door after coming from the neighbors' house Mr. Dixon was standing by the door. She had asked him to leave, but he wouldn't leave. So as she started to enter her door he pushed his way in. |
| Defense Counsel: | I'm going to object again, your Honor, as hearsay, may it be a continuing objection? |
| The Court: | It may be continuing. |
| Prosecutor: | [G]o ahead. |
| Witness: | He pushed his way in, grabbed Miss Sanders, pushed her down onto a glass table and then she ran out the apartment -- pushed her down and started hitting her and then Miss Marr saw this and ran out the apartment to the neighbors. |
| Defense Counsel: | I'm going to object, your Honor, as to what Miss Marr saw. This is pure hearsay. |
| The Court: | It's exception to the hearsay rule under excited utterance. Overruled. |
| Prosecutor: | What did Miss Marr tell you she did after she ran out of the apartment? |
| Witness: | She went to the next door neighbors' house and called the police. |
| Prosecutor: | Did she have her, did she tell you whether she ever returned to the apartment? |
| Witness: | She walked back to the apartment and -- she walked back to the door and was waiting for us. |
| Defense Counsel: | Your Honor, my same objection that was made in chambers continues. |
| The Court: | Very well. |

(Resp. Exh. A, Vol. II at 35-36). By comparison and in relevant part, the victim testified as follows:

| | |
|---|---|
| Prosecutor: | Let me go back just a little bit. Were you alone in the apartment at that time? |
| Victim: | Yes, I was. |
| Prosecutor: | And was the door locked originally? |
| Victim: | Yes, I had to open it for my aunt. |
| Prosecutor: | Okay. And how soon after you opened the door for your aunt was it that you saw Elbert Dixon? |
| Victim: | Seconds. |
| Prosecutor: | And would you describe what happened specifically? |
| Victim: | He pushed her so hard that he knocked a hole in her wall and he picked me up, threw me through a glass table. She said she was going to call the police. |
| Prosecutor: | Where -- let me -- I'm going to take this slowly if that's okay. Where was this glass table? |
| Victim: | In the middle of her living room floor. |
| Prosecutor: | And when you say he picked you up, would you describe for the jury what it is that he did. |
| Victim: | Just raised me up and threw me through the table. |
| Prosecutor: | Okay. And how did you land on the table? |
| Victim: | I didn't land on the table. I was on the floor. He threw me through the table. |
| Prosecutor: | Okay. And were you face up? Face down? On your side? |
| Victim: | Just like a person like I am now looking up. |
| Prosecutor: | What happened after that? |
| Victim: | He proceeded to stab me with the glass over and over. I project he realized he was cutting his own hands, so I heard him go to the kitchen. I heard the drawer rattling. I presume he was getting a knife. I got up as quick as I could |

|            | to try to run out the door.  He caught me at the door and proceeded to stab |
| me         |                                                                             |
|            | with a knife.                                                               |

Prosecutor: Was that right at the door?

Victim: Exactly at the door on my way out.  I was trying to get out.

Prosecutor: Did you ever go in the kitchen at all?

Victim: No.  When he went toward the kitchen I went towards the door.  I was trying to get away.

Prosecutor: And were you in the doorway when he stabbed you again?

Victim: Exactly.

Prosecutor: What happened after that?

Victim: I broke loose from him again and I proceeded to go right next door to Miss Mattie's house -- it's a friend of my aunt's -- to ask for help.  She didn't open the door.  So he's steady stabbing me.  I ran the other way.  I got away from him again, but he caught me soon as I got around the door and threw me through this window.

Prosecutor: Another window?

Victim: Yes.

Prosecutor: Was that to Evelina Marr's apartment or to a different apartment?

Victim: A different apartment.

Prosecutor: And what happened after that?

Victim: He kept stabbing me a little longer and I kept, I told him, I said, "Skip, you're stabbing me to death."  He didn't say anything.  And all of a sudden I heard someone say, "Police."  And his last thing, he took his foot and he kicked me in my head and said, "Bitch, you ain't dead yet?"

(Resp. Exh. A, Vol. II at 84-86).  Accordingly, the trial record before the Court shows that the

admission of Officer Woods' testimony did not result in a trial so fundamentally unfair as to deny

Petitioner due process of law inasmuch as the hearsay statements were cumulative to the statements made by victim at trial. Therefore, the claim raised in Ground two of the instant petition should be denied. 28 U.S.C. § 2254(d).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

## B.    Grounds 3 and 4

In Grounds 3 and 4 of the instant petition, Petitioner claims that he received ineffective assistance of trial counsel in that counsel failed to object to the variance between the information and the instruction for first degree assault and ineffective assistance of appellate counsel in that counsel failed to brief the variance issue on appeal.

Petitioner raised these claims in his motion for post-conviction relief and on appeal of the denial of the motion. Upon review of merits of this claim, the Missouri Court of Appeals denied Petitioner relief. (Resp. Exh. I; Dixon v. State, 108 S.W. 3d 123 (Mo. Ct. App. 2003)). For the reasons set forth below, the undersigned finds that Petitioner's claims for relief lack merit.

The undersigned notes that on appeal of the denial of the post-conviction motion, the

Missouri Court of Appeals affirmed the judgment denying Petitioner's Rule 29.15 motion in a cursory manner finding that no jurisprudential purpose would be served by an extended opinion. (Resp. Exh. I; Dixon, 108 S.W.3d 123). This Court is therefore without the benefit of any extended analysis by which the Missouri Court of Appeals made its determination that Petitioner was not entitled to relief on any of the claims properly brought before it. However, the circuit court entered Conclusions of Law and Order when denying Petitioner's amended post-conviction relief motion.

(Resp. Exh. G at Appendix A4-12). Habeas relief may be granted only if the decision of the state court is "substantially different" from what the decision would have been if that court had used the appropriate legal standard as established by the United States Supreme Court. Huss v. Graves, 252 F.3d 952, 956 (8th Cir. 2001) (quoting Williams, 529 U.S. at 405). The state court need not cite or even be aware of the governing Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam). As such, this Court must apply such established Supreme Court precedent to the facts of this case to determine whether Petitioner is entitled to relief on any of his claims.

A review of the record shows that petitioner raised these claims of ineffective assistance of trial counsel in his motion for post-conviction relief and on appeal of the denial of the motion. (Resp. Exh G. at 18-19 and Appendix at A4-12). After review of the merits of the claims, the circuit court denied Petitioner relief. (Resp. Exh. G at Appendix A4-12). To the extent these are the claims Petitioner raises in the instant petition, the claims are not procedurally defaulted. For the reasons set forth below, the undersigned finds that Petitioner's claims for relief lack merit.

In his post-conviction motion and on appeal, Petitioner claimed that

[m]ovant was denied his rights to due process and effective assistance of counsel as

- 17 -

guaranteed by the V, VI, and XIV Amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution in that Movant's attorney, Earlyne Thomas, failed to meet the standard of a reasonably competent attorney under similar circumstances. Thomas failed to object to a variance between the charging document and the instructions submitted to the juror's [*sic*]. Specifically, the Assault count alleged that Movant knowingly caused serious physical injury to Sanders by throwing her into a glass table. At the conclusion of the evidence the State tendered an instruction on assault alleging that Movant had caused the serious physical injury to Sanders by cutting her. Counsel did not object to the variance. Counsel's mistake prejudiced Movant because it broadened the range of conduct for which the jury could convict.

In paragraph 8(c) and 9(c) of his amended motion, Appellant pled that appellate counsel was ineffective for failing to raise and brief the issue of the variance,

> Movant was denied his rights to due process and effective assistance of counsel as guaranteed by the V, VI, and XIV Amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution in that Movant's appellate attorney, Deborah Wafer, failed to meet the standard of a reasonably competent attorney under similar circumstances. Wafer failed to raise the issue of the variance between the charging document and the instructions submitted to the jurors. Specifically, the Assault count alleged that Movant knowingly caused serious physical injury to Sanders by throwing her into a glass table. At the conclusion evidence the State tendered an instruction on assault alleging that Movant had caused the serious physical injury to Sanders by cutting her. Appellate counsel's mistake prejudiced Movant because it broadened the range of conduct of which the jury could convict and had the issue been raised the conviction would have been reversed.

(Resp. Exh. G at 10-12). Upon review of the claims, the circuit court noted in its written decision that

> 5. The second allegation in movant's amended motion is that his trial counsel failed to object to a variance between the charging document and the instructions tendered to the jury. Movant states that the assault count alleged that defendant knowingly caused serious physical injury to Sanders by throwing her into a glass table and that the armed criminal action count alleged that he accomplished the assault by use of a dangerous instrument. At the conclusion of the evidence the State tendered an instruction on assault alleging that movant had caused serious physical injury to Sanders by cutting her. Movant contends he was prejudiced by this instruction

because it broadened th range of conduct for which the jury could convict. Movant states that the evidence at trial was that he threw or pushed Sanders into a glass table which shattered, and that movant subsequently stabbed Sanders with a shard of glass and a knife. Movant complains that the State submitted without objection from trial counsel instruction Five which alleged that movant knowingly caused serious physical injury to Sanders by "cutting" her, that there was no amended information, and that trial counsel did not object to the language of the assault instruction which differed from the charged offense.

Movant was charged by Substitute Information In Lieu of Indictment in Count I with Assault First Degree under 565.050 RSMo. Section 565.050 provides: 1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person. Count I of the Information stated that "defendant knowingly caused serious injury to Jeannine Sanders by throwing her into a glass table." Movant was charged in Count III with Armed Criminal Action in violation of 571.015 RSMo. Count III of the Information stated that the "defendant committed the felony of Assault First Degree charged in Count I, all allegations of which are incorporated herein by reference, and the defendant committed the foregoing felony of Assault First Degree by, with and through the use, assistance and aid of a Dangerous Instrument." Instruction Number 5 read in part: "As to Count I, if you find and believe from the evidence beyond a reasonable doubt: That on or about September 4, 1998, in the City of St. Louis, State of Missouri, the defendant knowingly caused serious physical injury to Jeanine [*sic*] Sanders by cutting her, then you will find the defendant guilty under Count I of assault in the first degree...".[*sic*] Instruction Number 9 read in part: "As to Count III, if you find and believe from the evidence beyond a reasonable doubt: First that defendant is guilty of the offense of assault in the first degree, as submitted in Instruction No. 5, and Second, that defendant knowingly committed that offense with the use or assistance of a dangerous instrument, then you will find the defendant guilty under Count III of armed criminal action. As used in this instruction, the term "dangerous instrument" means any instrument, article, or substance which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury."

If the verdict-directing instruction submits a different method of committing the offense than the method charged in the information, there is a variance; however a variance does not necessarily constitute reversible error. To justify a reversal, the variance must be material and prejudicial to the rights of the accused. A variance is material when it affects whether an accused received adequate notice from the information. A variance is prejudicial when it affects the defendant's ability to adequately defend against the charges presented in the information and given to the jury in the instruction.

Movant states that his defense was that he did not pick up and throw the victim but that they had both fallen through a table while struggling over a knife she was wielding and that that [*sic*] whatever injuries she sustained had come from the fall through the glass table in the struggle. While there is a variance in the description of the method in which this crime was carried out, the Court finds that the variance did not prejudice or render implausible the defense that the injuries (cuts) were sustained when the two struggled over a knife wielded by the victim as they fell through a glass table. Movant does not state what defense he would have offered if the word cut had been a part of the information. Additionally the Court notes that the Armed Criminal Action count included the presence of a dangerous instrument. Accordingly, the Court denies this allegation.

Movant's final allegation is that his appellate counsel failed to raise the issue of variance between the pleadings and instructions. This allegation is without merit and denied for the reasons set forth in paragraph five. This variance would not have required reversal and did not result in a manifest injustice.

(Resp. Exh. G, Appendix at A5-8) (internal citations omitted). The record demonstrates that the armed criminal action count included the presence of a dangerous instrument. Further as noted by the circuit court, although there was a variance in the description of the method in which the crime was carried out, the circuit court found that the variance did not prejudice or render implausible the defense that the injuries were sustained when Petitioner and the victim struggled over a knife she wielded as they fell through a glass table. Likewise, the circuit court denied Petitioner's claim alleging that his appellate counsel failed to raise the issue of variance between the pleadings and the instructions on appeal for the same reasons and opined that the variance would not have required reversal and did not result in a manifest injustice. Furthermore, the circuit court determined Petitioner's claim that his appellate counsel failed to raise the issue of variance between the pleadings and instructions to be without merit and denied the claim finding that the variance would not have required reversal and did not result in a manifest injustice. These findings are fairly supported by the record and this Court finds no basis for departing from that analysis.

At the time Petitioner's conviction became final, the law was clearly established that in order to obtain relief under the Sixth Amendment for ineffective assistance of counsel, a petitioner must show that counsel's performance was both deficient and prejudicial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The crucial issue is whether the petitioner suffered material prejudice due to counsel's alleged deficient performance. Witherspoon v. Purkett, 210 F.3d 901, 903 (8th Cir. 2000). In order to show prejudice, Petitioner must establish that there is reasonable probability that but for trial counsel's unprofessional errors, the result of Petitioner's trial would have been different. Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In evaluating the probability of a different result, the court must consider the totality of the evidence. Id., 466 U.S. at 695. Rather than second-guessing counsel's actions with the benefit of hindsight, the reviewing court must examine counsel's decisions with a high degree of deference. Id., 466 U.S. at 689; White v. Helling, 194 F.3d 937, 941 (8th Cir. 1999) (the court "must resist the temptation to use hindsight to require that counsel's performance have been perfect. Only reasonable competence, the sort expected of the 'ordinary fallible lawyer' ... is demanded by the Sixth Amendment") (internal citation omitted). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996). Furthermore, even if Petitioner show counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.

In the instant claim of ineffective assistance of counsel, petitioner specifically contends that

trial counsel should have objected to a variance between the charging document and the instructions tendered to the jury. In addressing the claim, the circuit court determined petitioner not to have shown the variance to have been material and prejudicial to his rights. For the following reasons, this decision was neither contrary to, nor involved an unreasonable application of clearly established federal law, and Petitioner's claim will be denied.

The state court's rejection of Petitioner's claims constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

In its memorandum opinion, the circuit court set out the standard regarding when a variance constitutes reversible error and determined although there was a variance in the description of the method in which the crime was carried out, the variance did not prejudice or render implausible Petitioner's defense. In particular, the circuit court opined that the variance did not prejudice Petitioner's "defense that the injuries (cuts) were sustained when the two [Petitioner and the victim] struggled over a knife wielded by the victim as they fell through a glass table." (Resp. Exh. G, Appendix at A8). Indeed, the circuit court noted that Petitioner did not state what defense he would have offered if the word cut had been a part of the information and how the Armed Criminal Action count included the presence of a dangerous instrument. Furthermore, the circuit court determined Petitioner's claim that his appellate counsel failed to raise the issue of variance between the pleadings and instructions to be without merit and denied the claim finding that the variance would not have required reversal and did not result in a manifest injustice. (Resp. Exh. G, Appendix at A8). Such determination was not contrary to, nor involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claims "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such,

the instant claims should be denied.  28 U.S.C. §2254(d).  Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Petitioner Elbert Dixon's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket No. 1) be dismissed without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to timely file objections may result in a waiver of the right to appeal questions of fact.  <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this  21st  day of February, 2007.

  /s/ Terry I. Adelman
  UNITED STATES MAGISTRATE JUDGE